United States District Court
Eastern District of Michigan
Southern Division

United States of America,

Case No: 23-cr-20258

vs.

Hon. Laurie J. Michelson

Marcus McKinley Freeman,

Defendant.

_____/

## United States' Motion and Brief Opposing Defendant's Motion to Dismiss [ECF. No. 22]

For the reasons stated in the government's brief, the Court should

deny the defendant's Motion to Dismiss the Indictment.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Tara Mathena Hindelang*
Tara Mathena Hindelang
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: (313) 226-9543
E-Mail: Tara.Hindelang@usdoj.gov

Dated:  October 3, 2023

## Government's Response to Defendant's Motion to Dismiss the Indictment

I.     **Facts**

On March 20, 2023, Detroit Police Officers responded to a Shot Spotter notification for four shots of gunfire on Gilchrist Street. After a brief investigation, including review of Ring Doorbell footage, the defendant, Marcus Freeman, was identified as the shooter.

Freeman had exited the residence that was the subject of the notification holding a firearm. He had been in an argument about paying child support when he became irate and threatened to shoot a dog. Freeman stated: "I should bust this bitch ass dog," while a small brown dog stood in the front yard of the residence. Freeman then fired four shots into the ground before leaving the scene.

Responding officers collected four spent CCI Luger 9mm shell casings from the scene as evidence. The shell casings recovered resulted in a NIBIN lead to a shooting that occurred in December 2022 on Grandville Avenue in Detroit.

A grand jury indicted Freeman for being a felon in possession of ammunition. ECF. No. 13, PageID.25.

Freeman has a lengthy criminal history and was on parole at the time of the shooting. His prior felony convictions include the following:

- 2005 – Attempted Carrying a Concealed Weapon – sentenced to probation;

- 2006 – Delivery/Manufacture of a Controlled Substance, less than 50 grams – sentenced to three years of probation with the first six months in jail;

- 2007 – Larceny from a Person – sentenced to one to ten years in prison;

- 2009 – Felony Copying Audio/Video Recordings for Gain – sentenced to probation;

- 2017 – Felony Assault with Intent to do Great Bodily Harm less than Murder, Felon in Possession, Felony Firearm, Carrying a Concealed Weapon, Carrying a Dangerous Weapon with Unlawful Intent – sentenced as a Habitual 4th Offender to a total of six to ten years in prison.

Freeman now moves to dismiss the indictment against him for being a felon in possession of ammunition, arguing that the federal criminal statute at issue here is unconstitutional as applied to him after *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

## II.   Argument

While the Sixth Circuit has not resolved whether the felon-in-possession statute is susceptible to as-applied challenges, Freeman's

motion here fails for two related reasons. First, § 922(g)(1) is consistent with the Sixth Circuit's prior review of historical scholarship, which establishes that gun restrictions were not limited to those deemed to be dangerous but were instead directed at citizens who were not law-abiding and responsible. Section 922(g)(1) is accordingly constitutional on its face and in all its applications. *See, e.g.*, *United States v. Carey*, 602 F.3d 738, 740–41 (6th Cir. 2010) ("*Heller* states that the Second Amendment right is not unlimited, and, in fact, it is specifically limited in the case of felon prohibitions."); *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion) (noting that *Heller* did not recognize a broad "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"). And although *Bruen* struck down a New York law and articulated the test for evaluating gun-safety laws, nothing in *Bruen* undermined *Heller's* conclusions that prohibitions on felon armament are presumptively valid. *See Bruen*, 142 S. Ct. at 2157 (Alito, J. concurring) ("Nor have we disturbed anything we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns.").

3

Second and in any event, Freeman's nine felony convictions—five for gun offenses and one for an assaultive crime—show that he is more dangerous than a typical law-abiding citizen, and his motion thus fails even under an as-applied challenge.

## A. *Bruen* is Constitutional on its Face

### 1. *Bruen* and the Second Amendment Standard

In *Bruen*, the Court held that the Second Amendment protects the right of "law-abiding, responsible citizens" to "carry a handgun for self-defense outside the home." 142 S. Ct. at 2156. The Court struck down a New York law that required residents to demonstrate a "proper[ ]cause" to obtain a license to carry a handgun outside the home because that law "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id*. In reaching this conclusion, *Bruen* rejected the "two-step" Second Amendment framework adopted by most courts of appeals after *Heller* that "combine[d] history with means-end scrutiny." *Id*. at 2125.

And then *Bruen* clarified the "standard for applying the Second Amendment." *Id*. at 2129. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively

protects that conduct." *Id.* at 2129–30. Second, when a regulation

infringes such presumptively protected conduct, "[t]he government

must . . . justify its regulation by demonstrating that it is consistent

with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

The Court explained that the relevant "metrics" for assessing a

regulation's constitutionality are "how and why the regulations burden

a law-abiding citizen's right to armed self-defense." *Id.* at 2133.

## 2.    The Supreme Court has not Cast Doubt on 18 U.S.C. § 922(g)

The Supreme Court has emphasized that its decisions should not

"be taken to cast doubt on longstanding prohibitions on the possession

of firearms by felons." *D.C. v. Heller*, 554 U.S. 570, 626 (2008); *see also*

*McDonald*, 561 U.S. at 786 (2010) (plurality opinion) ("repeat[ing]"

*Heller's* "assurances" regarding such prohibitions). And in *Bruen*, six

Justices took pains to reiterate that certain firearms regulations,

including prohibitions on the possession of firearms by felons, are

constitutional. *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring)

(explaining that *Bruen* did not "disturb[] anything that [the Court] said

in *Heller* or *McDonald* about restrictions that may be imposed on the

possession or carrying of guns" (citation omitted)); *id.* at 2162

5

(Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating that "longstanding prohibitions on the possession of firearms by felons" are constitutional under *Heller* and *McDonald* (quotation marks omitted)); *id*. at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) (same).

Consistent with the Supreme Court's admonitions about prohibitions on firearm possession by felons, the Sixth Circuit has rejected facial challenges to § 922(g)(1). *See, e.g.*, *Carey*, 602 F.3d at 741 ("In short, *Heller* states that the Second Amendment right is not unlimited and, in fact, it is specifically limited in the case of felon prohibitions."); *United States v. Khami*, 362 F. App'x 501, 508 (6th Cir. 2010); *United States v. Frazier*, 314 F.App'x 801, 807–08 (6th Cir. 2008). In other words, the Sixth Circuit in *Carey* interpreted laws prohibiting felons from possessing firearms as lawful without employing any type of test that would have been upended by *Bruen*. And, as discussed in further detail later, *Bruen* does not jeopardize *Carey's* holding on § 922(g)(1) because *Carey* did not rely on means-end scrutiny.

In *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678, 686–88 (6th Cir. 2016) (en banc), the Sixth Circuit again acknowledged

6

that the presumption language in *Heller* solely justified rejecting a

Second Amendment challenge involving § 922(g)(1). *See also id*. at 714–

15 (Moore, J., dissenting) ("We have relied on this language in *Heller* to

reject Second Amendment challenges to felon-in-possession convictions

under § 922(g)(1) without examining history or applying any level of

means-end scrutiny.") (citing *Carey*, 602 F.3d at 741)). And every

district court in this district to reach the issue, including this Court, has

rejected a post-*Bruen* challenge to the constitutionality of 18 U.S.C. §

922(g)(1).[1]

---

[1] *United States v. Nailor,* No. 2:23-cr-20076, Dkt. No. 59, (E.D. Mich. Sept. 15, 2023)
(Cox, J.); *United States v. Dobbs*, No. 2:22-cr-20068, Dkt. No. 38, (E.D. Mich. July
18, 2023) (Parker, J.); *United States v. Holmes*, No. 2:23-cr-20075, Dkt. No. 43, 2023
WL 4494340 (E.D. Mich. July 12, 2023) (Parker, J.); *United States v. Keels*, No. 2:23-
cr-20085, Dkt. No. 40, 2023 WL 4303567 (E.D. Mich. June 30, 2023) (Lawson, J.);
*United States v. Nelson*, No. 2:22-cr-20512, Dkt. No. 42, ___ F.Supp.3d___, 2023 WL
4249367 (E.D. Mich. June 29, 2023) (Berg, J.); *United States v. Gibbs*, No. 2:22-cr-
20268, Dkt. No. 50 (E.D. Mich. June 7, 2023) (Friedman, J.); *United States v.
Hopkins*, No. 2:22-cr-20448, Dkt. No. 48 (E.D. Mich. June 6, 2023) (Friedman, J.);
*United States v. Neely*, No. 2:22-cr-20513, Dkt. No. 27, 2023 WL 3669346 (E.D.
Mich. May 25, 2023) (Parker, J.); *United States v. Haywood*, No. 2:22-cr-20417, Dkt.
No. 44, 2023 WL 3669333, (E.D. Mich. May 25, 2023) (Parker, J.); *United States v.
Carter*, No. 2:22-cr-20477, Dkt. No. 51 (E.D. Mich. May 9, 2023) (Roberts, J.); *United
States v. Bluer*, No. 2:22-cr-20557, Dkt. No. 27 (E.D. Mich. May 8, 2023) (Michelson,
J.); *United States v. Hazley*, No. 2:22-cr-20612, Dkt. No. 32, 2023 WL 3261585 (E.D.
Mich. May 4, 2023) (Parker, J.); *United States v. Taylor*, No. 3:22-cr-20315, Dkt. No.
36 (E.D. Mich. Apr. 26, 2023) (Cleland, J.); *United States v. Mcilwain*,
No. 2:23-cr-20012, Dkt. No. 28 (E.D. Mich. Apr. 26, 2023) (Murphy, J.); *United
States v. Thomas*, No. 2:23-cr-20036, Dkt. No. 27 (E.D. Mich. Apr. 25, 2023)
(Murphy, J.); *United States v. Smith*, No. 22-cr-20351, Dkt. No. 35, 2023 WL 336136
(E.D. Mich. Feb. 24, 2023) (Goldsmith, J.); *United States v. Ross*, No. 22-cr-20049,
Dkt. No. 34 (E.D. Mich. Feb. 15, 2023) (Murphy, J.); *Shelby-Journey-Egnis v. United*

Even if *Heller's* presumption is characterized as dicta as the defendant here claims, the Sixth Circuit has also held that courts "are obligated to follow Supreme Court dicta, particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002) (citing *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements.")). *See also Khami*, 362 F. App'x at 508 (*Heller* dicta carries significant weight). As pointed out by the concurring and dissenting justices, nothing in *Bruen* undercuts the presumptive validity of felon-in-possession prohibitions.

In short, *Bruen* does not jeopardize *Carey's* holding on § 922(g)(1) because *Carey* did not rely on means-end scrutiny. This is why district courts in other Circuits that also upheld felon-in-possession laws without relying on any means-end scrutiny tests continue to be bound by their

---

*States*, No. 2:21-cr-20535, Dkt. No. 53 (E.D. Mich. Dec. 5, 2022) (Lawson, J.); *United States v. Burrell*, No. 3:21-cr-20395, Dkt. No. 34, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022) (Cleland, J.).

circuits' laws. *See, e.g., United States v. Hill*, ___ F. Supp. 3d ___; 2022 WL 4361917 at *2–3 (S.D. Calif., Sept. 20, 2022) (denying challenge to § 922(g)(1) because Ninth Circuit precedent was not "effectively overruled" by *Bruen*). Similarly, the Eighth Circuit upheld the constitutionality of 18 U.S.C. § 922(g)(1). *See United States v. Jackson,* 69 F.4th 495, 502 (8th Cir. 2023). The Eighth Circuit has also held that nothing in *Bruen* overruled its precedent that unlawful aliens are not within the class of "law-abiding responsible citizens" under *Heller*—emphasizing that because the court arrived at this conclusion without employing means-ends scrutiny, *Bruen* did not overrule its precedent. *United States v. Sitladeen*, 64 F.4th 978, 984–87 (8th Cir. 2023). Accordingly, this Court remains bound by *Carey's* holding that *Heller* did not overturn prohibitions against felons possessing firearms. Freeman's motion should be denied under *Carey*.

## B.    The Court Should Reject Freeman's As-Applied Challenge

Freeman asserts an as-applied challenge here. Motion to Dismiss, ECF No. 22, PageID.78. The Sixth Circuit has not determined whether 18 U.S.C. § 922(g)(1) is susceptible to as-applied challenges. If the Court

resolves that question here, it should hold that the felon-in-possession statute is constitutional in all its applications because the Second Amendment does not prevent Congress from generally prohibiting firearm or ammunition possession by individuals convicted of crimes punishable by more than one year of imprisonment. In any event, Freeman's as-applied challenge fails because he has nine felony convictions, including one for assault with intent to do great bodily harm less than murder (an "assaultive crime" and "violent felony" under Michigan law), and has spent significant time in prison on that conviction.

## 1. The text and history of the Second Amendment demonstrate that "the people" whose right it protects are only law-abiding, responsible citizens.

In interpreting the Second Amendment's text and history, the Supreme Court has held that the Amendment's scope is limited to the community of law-abiding, responsible citizens. Hence, as a convicted felon, the Second Amendment does not grant Freeman the right to keep and bear arms.

### a. The Supreme Court has interpreted the Second Amendment's text as protecting an individual

**right retained by law-abiding, responsible persons.**

"The people" whose rights the Second Amendment protects are law abiding, responsible members of the American polity, not felons. *Heller*, 554 U.S. at 635. In *Heller*, the Court began its analysis of the Second Amendment by analyzing the Amendment's text to decide whether "the people" referenced in the Amendment was more likely a reference to individuals or the collective (the specific collective at issue there being the militia). *Id*. at 579–80. The Court began by explaining that "the people" is a term of art, which throughout other parts of the Constitution dealing with rights "unambiguously refers to all members *of the political community*, not an unspecified subset." *Id*. (emphasis added).

The Court then further explained that it found "the militia" to be too narrow a subset to be an appropriate reading of "the people" because the "militia" only included people who were male, able bodied, and within a certain age range. *Id*. at 580–81 ("Reading the Second Amendment as protecting only the right to 'keep and bear Arms' in an organized militia therefore fits poorly with the operative clause's description of the holder of that right as 'the people.'"). In that narrow

11

context of discussing whether "the people" referred to an individual or collective right, the court stated that "the people" presumably referred to an individual right that belonged to "all Americans." *Id*. at 581.

But in presuming that the Second Amendment right belonged to "all Americans," the Court did not hold that "all Americans" included felons. Rather—after completing a thorough historical analysis—the Court articulated that the exact interest protected by the Second Amendment's text was: "the right of *law-abiding, responsible* citizens to use arms in defense of hearth and home." *Id*. at 635 (emphasis added); *see also id*. at 644 (Stevens J., joined by Souter, Ginsburg, and Breyer, J.J., dissenting) (explaining how the *Heller* majority "limits the protected class" in multiple ways).

In *Bruen*, the Supreme Court confirmed—explicitly and repeatedly—that the right to keep and bear arms belongs only to ordinary, law-abiding citizens. *See Bruen*, 142 S. Ct. at 2122 (stating that *Heller* "recognized that the Second and Fourteenth Amendments protect the right of an *ordinary, law-abiding* citizen to possess a handgun in the home for self-defense" (emphasis added)); *id*. at 2131 (quoting *Heller's* statement that the Second Amendment protects "'the

right of *law-abiding, responsible* citizens to use arms' for self-defense"
(emphasis added)); *id*. at 2133 (stating that the historical inquiry
should consider "how and why the regulations burden a *law-abiding*
*citizen's* right to armed self-defense" (emphasis added)); *id*. at 2156
(holding that New York's licensing law violates the Second Amendment
because "it prevents *law-abiding* citizens with ordinary self-defense
needs from exercising their right to keep and bear arms" (emphasis
added)). Indeed, the *Bruen* Court described the holders of Second
Amendment rights as *law-abiding* citizens no fewer than fourteen
times.

> **b.   The Second Amendment's history confirms the Supreme Court's interpretation of its text.**

The Second Amendment's history likewise reveals that the right it
enshrined belonged only to law-abiding citizens. In *Heller*, after looking
at the Amendment's plain words, the Supreme Court examined the
Amendment's history. The Court explained that "it has always been
widely understood that the Second Amendment, like the First and
Fourth Amendments, codified a *pre-existing* right." *Heller*, 554 U.S. at
592. In *Bruen*, the Supreme Court further elaborated that the
Amendment codified a compromise between the interests of *law-*

*abiding, responsible* citizens and the government. *See Bruen*, 142 S. Ct. at 2131 ("The Second Amendment 'is the very *product* of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense.").

Numerous courts of appeal have also concluded that felons are categorically outside the Second Amendment's protection. The most recent is the Eighth Circuit in *United States v. Jackson*, which concluded that Section 922(g)(1) is constitutional based on the presumption language in *Heller*, along with the repeated "assurances by the Supreme Court" in *McDonald* and *Bruen. Jackson*, 69 F.4th at 502.  Citing *Heller's* admonition that nothing in *Heller* should cast doubt on felon-in-possession prohibitions, the Eighth Circuit also concluded that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Id.*

The Eighth Circuit also relied on the historical analysis by the panel in *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022) *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023). It relied on this history to show that legislatures have "longstanding authority and

discretion to disarm citizens who are not 'law-abiding'—i.e., those who are 'unwilling to obey the government and its laws, whether or not they had demonstrated a propensity for violence.'" *Id*. at \*4. Indeed, the original panel in *Range* conducted a thoughtful and extensive historical analysis before it concluded: "Our Court's own review of the historical record supports the Supreme Court's understanding: Those whose criminal records evince disrespect for the law are outside the community of law-abiding citizens entitled to keep and bear arms." *Range*, 53 F.4th at 273; *Jackson*, 69 F.4th at 503-504.

*Jackson* is not alone. Many courts of appeal agree that the Second Amendment codified "a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible." *United States v. Bena*, 664 F.3d 1180, 1183–84 (8th Cir. 2011); *Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir. 2019) (holding that "a felony conviction removes one from the scope of the Second Amendment."); *United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012) (holding that a defendant with prior felonies "simply does not fall within the category of citizens to which the Heller court ascribed the Second Amendment['s] protection . . . "); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir.

2010) (explaining that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" (quoting *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010)); *United States v. Rene E.*, 583 F.3d 8, 15–16 (1st Cir. 2009) ("Perhaps the most accurate way to describe the dominant understanding of the right to bear arms in the Founding era is as . . . limited to those members of the polity who were deemed capable of exercising it in a virtuous manner." (citation omitted)).

In line with these circuits' holdings, Thomas Cooley explained in his "massively popular 1868 Treatise on Constitutional Limitations," *Heller*, 554 U.S. at 616, that "the people in whom is vested the sovereignty of the State . . . cannot include the whole population," and that "[c]ertain classes have been almost universally excluded"— including "the idiot, the lunatic, and the felon, on obvious grounds," Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 28–29 (1868). Consequently, felons were historically excluded from "exercis[ing] the elective franchise," *id*. at 29, as well as from other,

16

closely related "political rights," including the rights to "hold public office," to "serve on juries," and, most relevant here, "to bear arms," *see* Akhil Reed Amar, *The Bill of Rights* 48 (1998).

Standing in stark isolation is the recent Third Circuit opinion in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc). Aside from the fact that the opinion is non-precedential in the Sixth Circuit—it even notes that "district courts are bound to follow their circuits' precedent," *id*. at 106—it contradicts the Sixth Circuit's opinion in *Carey* and lacks persuasive value as well.

Critical of the *Range* majority's reasoning, one dissenter pointed out that "the majority opinion commits our Court to a framework so indefinite as to be void for vagueness." *Id*. at *19 (Krause, J., dissenting). It is "unworkable" and offers no real guidance on how to apply its decision in other cases other than mere "conjecture." *Id*. at *29–*30 (Krause, J., dissenting). There are no standards offered to determine who the majority identified as "people like Range," *id*. at *8, and more significantly, who's not. The Third Circuit simply rejected the Supreme Court's emphasis on "law-abiding responsible citizens" as "expansive" and "vague" that inappropriately "devolves authority to

17

legislators to decide whom to exclude from 'the people.'" *Id*. at *4–*5.
Moreover, the Third Circuit similarly rejected *Heller's* statement that
felon-in-possession laws are presumptively lawful because 18 U.S.C. §
922 was not longstanding "enough" and that Range would not have
been considered under that law at the time of its enactment. *Id*. at *5–
*6. This directly contradicts both the Eighth Circuit and Sixth Circuit
cases that have explicitly deferred to *Heller's* statement. As another
dissenter observed, the Third Circuit engaged in a search for a
historical twin to the felon-in-possession law rather than a historical
analogy. *Id*. at *16 (Shwartz, J., dissenting). The en banc *Range* opinion
contradicts the Sixth Circuit and lacks both precedential and
persuasive value. The Court should give it no weight.

Even the Fifth Circuit—which invalidated a different subsection
of § 922— did not question the validity of § 922(g)(1). *United States v.
Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, involved a challenge
to § 922(g)(8), which imposes firearm restrictions against those subject
to domestic violence protection orders. The court specifically noted that
"Rahimi was not a convicted felon or otherwise subject to another
longstanding prohibition on the possession of firearms that would have

18

excluded him." *Id.* at 452 (citing *Heller*, 554 U.S. at 626–27) (cleaned up). And *Rahimi* further noted, quoting the original *Range* panel, that *Heller*, *McDonald*, and *Bruen* all "support that criminals, as a group, fall outside 'the people' and that § 922(g)(1) is well-rooted in the nation's history and tradition of firearm regulation." *Id.* (quoting *Range*, 53 F.4th at 273) (cleaned up). *See also United States v. Daniels*, No. 22-60596, ___ F.4th ___, 2023 WL 5091317, *4 (5th Cir. Aug. 9, 2023) (citing *Rahimi* that felons were "historically stripped of their Second Amendment rights.").

As to § 922(g)(1), the Sixth Circuit has already held that felons may be categorically disqualified from possessing arms without violating the Second Amendment. *See Carey*, 602 F.3d at 741; *Khami*, 362 F.App'x at 508; *United States v. Frazier*, 314 F.App'x 801, 807 (6th Cir. 2008). That's because—consistent with this nation's history from the founding to present—legislatures have retained wide latitude to exclude felons from the political community. *See Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017) (labeling a crime a felony represents a "determination that the crime reflects 'grave misjudgment and maladjustment'" such that a felon is not a "'law-abiding, responsible

citizen[]' for purposes of the Second Amendment."). Because the Sixth

Circuit has already determined that § 922(g)(1) is valid under *Heller*,

this Court must deny the motion.

    **c.**    **Congress's authority to categorically disarm all convicted felons is consistent with the tradition of firearms regulation in this nation.**

Even if the Supreme Court had not already defined the Second

Amendment in a way that categorically excludes felons, a review of

"this Nation's historical tradition of firearm regulation" would also

compel upholding felons' categorical disarmament. *See Bruen*, 142 S. Ct.

at 2126. Rather than repeat the historical record identified and

analyzed by other courts, the United States directs the court to the

Eighth Circuit published opinion in *Jackson*, 69 F.4th at 503-506, the

panel opinion in *Range*, 53 F.4th at 271–85, the dissenting opinion of

Judge Krause in *Range* (en banc), 2023 WL 3833404, *17–*34, and the

Brief for United States at 13–29*, United States v. Rahimi*, No. 22-215,

Supreme Court of the United States (filed Aug. 14, 2021), available at

http://www.supremecourt.gov/DocketPDF/22/22-

915/275296/20230814194956129_U.S.%20v.%20Rahimi%20J.A.pdf.

**d.    At the very least, § 922(g)(1) is constitutional as applied to Freeman based on his nine prior felony convictions.**

To be clear, "no appellate court has held that 922(g)(1) violates the Second Amendment post-*Bruen*." *United States v. Keels*, No. 23-20085, 2023 WL 4303567, at *6 (E.D. Mich. June 30, 2023) (Lawson, J.) (citing *United States v. Hill*, No. 22-2400, 2023 WL 2810289, at *2 (7th Cir. Apr. 6, 2023)). And *Range*, the case cited most prominently by Freeman, also does not support his position. In *Range*, the defendant's conviction: (1) was a non-violent misdemeanor offense for making false statements to obtain food stamps; (2) was more than 25 years old; and (3) resulted in a probationary sentence only. *Range*, 69 F.4th at 98. Moreover, since his 1995 conviction, Range's criminal record included only minor traffic and parking infractions and a violation for fishing without a license. *Id*.[2]

Freeman's criminal history, on the other hand, includes recent convictions for felony offenses, one violent and several related to his unlawful possession of a firearm, for which he spent a significant time

---

[2] And unlike *Range*, who filed a declaratory judgment action for a determination of whether he could lawfully possess a firearm before doing so, *id*. at 98–99, Freeman instead intentionally violated a law that he knew applied to him for a second time; he had already been convicted in 2017 of being a felon in possession.

in prison. He, therefore, "cannot credibly assert that he is 'like Range.'" *Keels*, 2023 WL 4303567, at *6 (citing *Range*, 69 F.4th at 131 (Krause, J., dissenting) ("criticizing the court for jettisoning a 'straightforward test' for barring firearm possession — a felony conviction — and replacing it "with an opaque inquiry — whether the offender is 'like Range'")). And the *Range* Court itself "found historical precedents for disarming violent felons like [Freeman]." *Id*.

Freeman "cites no applicable authority finding that section 922(g)(1) is facially unconstitutional in light of *Bruen* or is unconstitutional as applied to him." *Id*. And even more importantly, as Judge Lawson of this district recently pointed out, "*Bruen* does not suggest that a court must analyze the criminal history of each charged felon to determine if his or her predicate crime fits within a constitutional firearm possession bar." *Id*. That is because the Supreme Court has emphasized that its decisions should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626; *see also McDonald*, 561 U.S. at 786 (2010) (plurality opinion) ("repeat[ing]" *Heller's* "assurances" regarding such prohibitions).

## **Conclusion**

The Court should deny Freeman's Motion to Dismiss the Indictment.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Tara Mathena Hindelang*
Tara Mathena Hindelang
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: (313) 226-9543
Tara.Hindelang@usdoj.gov

Dated:  October 3, 2023

## Certificate of Service

I certify that on October 3, 2023, I filed the foregoing document with the Clerk of the Court via the Court's CM/ECF system, which will provide notification of such filing to all counsel of record.

*s/Tara Mathena Hindelang*
Tara Mathena Hindelang
Assistant U.S. Attorney
