UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARCUS MCKINLEY FREEMAN,

    Defendant.

Case No. 23-20258
Honorable Laurie J. Michelson

---

# OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS [22]

In May 2023, Marcus McKinley Freeman was indicted on one count of being a felon in possession of a firearm. (ECF No. 13.) The charge stems from a March 2023 nonfatal shooting outside a Detroit residence. (ECF No. 1.) After getting into an argument about paying child support, Freeman allegedly threatened to shoot a dog, fired four shots at the ground, then left the scene. (*Id.* at PageID.4–5.) Detroit police officers identified Freeman as the shooter after reviewing Ring doorbell footage. (*Id.* at PageID.6–7.) According to the government, Freeman has "at least" five prior felony convictions, beginning in 2005 and most recently in 2017 (*id.* at PageID.5–6), and was on parole at the time of the shooting (ECF No. 24, PageID.86).

Freeman moves to dismiss the indictment. (ECF No. 22.) He does not deny his felon status. Instead, he asserts that under the Supreme Court's text-and-history test for whether a firearm regulation violates the Second Amendment, the felon-in-possession statute is unconstitutional as applied to him. (*See id.*); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). The government opposes the motion. (ECF No. 24.)

Since *Bruen* was decided, numerous defendants in this District and across the country have filed virtually identical motions. Thus, given the adequate briefing (*see* ECF Nos. 22 (Freeman's motion to dismiss), 24 (government's response), 25 (Freeman's reply)), applicable authority, and nature of the issue, the Court considers the motion without further argument, *see* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, Freeman's motion is DENIED.

## I.

Freeman is charged with violating the felon-in-possession statute, 18 U.S.C. § 922(g)(1), which makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year [i.e., a felony]," to possess a firearm. Freeman has numerous prior felony convictions that make it unlawful for him to possess a firearm: in 2005, attempted carrying of a concealed weapon; in 2007, delivering or manufacturing fewer than 50 grams of a controlled substance; also in 2007,

2

larceny from the person; in 2009, copying audio/video recordings for gain; and in 2017, felony assault with intent to do great bodily harm less than murder, possession of a firearm during the commission of a felony ("felony-firearm"), being a felon in possession of a firearm ("felon-in-possession"), carrying a concealed weapon, and carrying a dangerous weapon with unlawful intent. (ECF No. 1, PageID.5–6.)

Freeman moves to dismiss the indictment, arguing that the felon-in-possession statute violates the Second Amendment. (ECF No. 22.) Specifically, Freeman contends that under the framework the Supreme Court articulated in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the Second Amendment presumptively protects his right to possess a firearm even with a felony conviction and the government cannot meet its evidentiary burden of showing a similar historical prohibition (ECF No. 22, PageID.68).

## II.

Start with the applicable Second Amendment jurisprudence, both pre- and post-*Bruen*. As the Court will explain below, *Bruen* set forth a new test for Second Amendment challenges to firearm regulations—a test that displaced the "consensus approach" applied by lower courts "for over a decade," *Bruen*, 142 S. Ct. at 2175, but validated and crystallized the approaches of prior Supreme Court decisions like *District of Columbia v. Heller*, 554 U.S. 570

(2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *see Bruen*, 142 S. Ct. at 2126–27.

In turn, in the absence of a post-*Bruen* Sixth Circuit opinion on the issue, pre-*Bruen* cases addressing the constitutionality of the felon-in-possession statute can be separated into two categories: those that relied on the means-end approach that *Bruen* rejected and those that relied on "*Heller*'s methodology centered on constitutional text and history" that *Bruen* affirmed. *Bruen*, 142 S. Ct. at 2128–29. The latter remain binding on this Court. And, as the Court outlines below, the vast majority of courts to have considered the statute's constitutionality post-*Bruen* have upheld it.

The Court reviews this precedent below, turning first to the Supreme Court.

### A. Supreme Court Second Amendment Case Law

Before *Bruen*, to determine whether a challenged firearm regulation violated the Second Amendment, courts applied a two-step means-end test based on the Supreme Court's decision in *D.C. v. Heller*. *See United States v. Ramadan*, No. 22-1243, 2023 WL 6634293, at *2 (6th Cir. Oct. 12, 2023). This test first asked whether the Second Amendment applies—in other words, "whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood." *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012), *abrogated by Bruen*, 142 S. Ct. at 2126–27.

4

If yes or if unclear—i.e., "if the historical evidence is inconclusive or suggests that the regulated activity is *not* categorically unprotected"—then under the second step courts "applie[d] the appropriate level of scrutiny" to assess "the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Greeno*, 679 F.3d at 518; *see Bruen*, 142 S. Ct. at 2125 ("In the years since [*Heller* and *McDonald*], the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny.").

Then came *Bruen*. There, the Supreme Court rejected the means-end framework because it involved "one step too many," *Bruen*, 142 S. Ct. at 2127, and replaced it with a text-and-history test, *id.* at 2128–29, 2131. To assess the constitutionality of firearm regulations under the *Bruen* test, courts must still ask whether the plain text of the Second Amendment applies to the person and his conduct—that is, whether the individual is among "the people," as used in Second Amendment. *See* U.S. Const. amend. II (protecting "the right of the people to keep and bear Arms"); *Bruen*, 142 S. Ct. at 2134–37 ("Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* at 2127.). But if the answer to that question is yes, then "the Constitution presumptively protects that conduct," and a firearm regulation cannot be found constitutional simply because the government's stated end and chosen means

5

pass heightened scrutiny. *Id.* at 2126. Instead, the government must "affirmatively prove" that the law is "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126–27.

While *Bruen* displaced the two-step test that appellate courts developed based on *Heller*, it did not overturn *Heller* or call its reasoning into question. In fact, *Bruen* expressly affirmed *Heller* and asserted that lower courts misread the case.

*Bruen* left "untouched" *Heller*'s often cited dicta about "longstanding prohibitions on the possession of firearms by felons." *United States v. Ross*, No. 23-20168, 2023 WL 7345908, at *10 (E.D. Mich. Nov. 7, 2023) (citing *Heller*, 554 U.S. at 626). In *Heller*, the Supreme Court held that the Second Amendment confers upon "law-abiding, responsible citizens" the right to keep a firearm in the home for self-defense. *Heller*, 554 U.S. at 635. Even while striking down D.C. gun laws that infringed upon that right, the *Heller* Court emphasized in dicta several "presumptively lawful" limitations on Second Amendment rights, specifically including felon-in-possession laws. *See Heller*, 554 U.S. at 626 & n.26. "Like most rights, the right secured by the Second Amendment is not unlimited. . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," the Court wrote. *Id.* at 626. Two years later in *McDonald v. City of Chicago*, the Supreme Court reaffirmed that dicta: "We made it clear

6

in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons . . . .' We repeat those assurances here." *McDonald*, 561 U.S. at 786.

Indeed, "*Bruen* does not upset the Supreme Court's consistent endorsement of felon disarmament." *United States v. Keels*, No. 23-20085, 2023 WL 4303567, at *6 (E.D. Mich. June 30, 2023). For one, *Bruen* did not concern the rights of people convicted of crimes. *See Bruen*, 142 S. Ct. at 2134. Rather, the problem with New York's handgun licensing regime was that it "prevent[ed] *law-abiding* citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156 (emphasis added). And even so, the Court "reaffirmed the pronouncements made in *Heller*, noting that the right to bear arms is 'subject to certain reasonable, well-defined restrictions.'" *United States v. Williams*, No. 23-20243, 2023 WL 8190690, at *4 (E.D. Mich. Nov. 27, 2023) (quoting *Bruen*, 142 S. Ct. at 2156). The *Bruen* Court did not provide specific examples of "reasonable, well-defined restrictions," but its analysis supports a continued distinction between firearm regulations impacting "law-abiding citizens" and people convicted of felonies. And, quoting *Heller*, the *Bruen* Court advised that the Second Amendment "'surely elevates above all other interests the right of *law-abiding*, responsible citizens to use arms' for self-defense." *Bruen*, 142 S. Ct. at 2131 (emphasis added) (quoting *Heller*, 554 U.S. at 635). What is more, in separate opinions

7

six Justices specifically endorsed *Heller*'s language on "longstanding prohibitions" that are "presumptively lawful."[1]

Far from overturning *Heller*, the Supreme Court understood *Bruen* to be "[f]ollowing the course charted by *Heller*." *See id.* at 2122, 2126 (noting that its holding is both "consistent with *Heller*," *id.* at 2122, and "[i]n keeping with *Heller*," *id.* at 2126). According to *Bruen*, "*Heller*'s methodology centered on constitutional text and history"—precisely the methodology that *Bruen* requires in the context of Second Amendment challenges to gun laws. *Id.* at 2128–29. So lower courts were wrong to call the now-abandoned two-step framework that culminated in a means-end scrutiny analysis "the *Heller* test" or to cite *Heller* as its source. *See id.* at 2127 ("To show why *Heller* does not support applying means-end scrutiny, we first summarize *Heller*'s methodological approach to the Second Amendment."), 2129 ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny."). Instead, the *Bruen* Court described

---

[1] *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (specifying that *Bruen* did not "disturb[] anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns"); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, J.) (excerpting *Heller*'s dicta, including the assertion that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" (quoting *Heller*, 554 U.S. at 626)); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.) (affirming firearm regulations that *Heller* identified as "presumptively lawful" based on history and tradition, including prohibitions on the possession of firearms by people convicted of felonies).

8

the *Bruen* and *Heller* tests as one in the same. *See id.* at 2131 (referring to the text-and-history test announced in *Bruen* as "[t]he test we set forth in *Heller* and apply today"), 2138 (analyzing the New York regulation "[u]nder *Heller*'s text-and-history standard," i.e., under the text-and-history test set forth in *Bruen*). *Bruen*'s importance, then, was that it "made the constitutional standard endorsed in *Heller* more explicit." *Id.* at 2134.

Thus, *Bruen* gives this Court no reason to think that *Heller*'s "longstanding prohibitions" language is in doubt.[2] The *Bruen* majority—and six concurring and dissenting Justices—signaled support for a Second Amendment distinction between regulations impacting "law-abiding citizens" and those concerning people convicted of crimes. And even more broadly, *Bruen* embraced if not adopted the reasoning in *Heller*. With this in mind, the Court turns to Sixth Circuit precedent.

### B. Sixth Circuit Second Amendment Precedent

Post-*Heller* and pre-*Bruen*, the Sixth Circuit has repeatedly held that the felon-in-possession statute is constitutional under the Second Amendment.

---

[2] Many judges in this District have likewise concluded that *Bruen* did not disturb *Heller* and thus that felon-in-possession regulations are presumptively lawful. *See, e.g.*, *United States v. Nelson*, No. 22-20512, 2023 WL 4249367 (E.D. Mich. June 29, 2023) (Berg, J.); *United States v. Burrell*, No. 21-20395, 2022 WL 4096865, at *1 (E.D. Mich. Sept. 7, 2022) (Cleland, J.); *United States v. Smith*, No. 22-20351, 2023 WL 2215779 (E.D. Mich. Feb. 24, 2023) (Goldsmith, J.); *Ross*, 2023 WL 7345908 (Ludington, J.); *United States v. Hazley*, No. 22-20612, 2023 WL 3261585 (E.D. Mich. May 4, 2023) (Parker, J.); *United States v. Carter*, No. 22-20477, 2023 WL 3319913 (E.D. Mich. May 9, 2023) (Roberts, J.).

*See, e.g.*, *United States v. Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008); *United States v. Khami*, 362 F. App'x 501, 507–08 (6th Cir. 2010); *Stimmel v. Sessions*, 879 F.3d 198, 203 (6th Cir. 2018); *United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2 (6th Cir. Mar. 7, 2022) ("[W]e have repeatedly found that prohibitions on felon possession of firearms do not violate the Second Amendment." (internal quotation marks omitted)). In particular, the Sixth Circuit "unambiguously held in *United States v. Carey* that felon-in-possession statutes do not violate the Second Amendment." *United States v. Vaughn*, No. 23-5790, 2023 U.S. App. LEXIS 25818, at *3 (6th Cir. Sept. 28, 2023) (citing *Carey*, 602 F.3d 738, 741 (6th Cir. 2010)).

To reach that conclusion, the *Carey* panel never applied the now-rejected two-step framework often attributed to *Heller*. Instead, *Carey* reasoned from dicta in *Heller*, specifically *Heller*'s assertion that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Carey*, 602 F.3d at 741 (quoting *Heller*, 554 U.S. at 626). As explained above, that dicta was not overruled by *Bruen*. The Sixth Circuit also pointed to *Heller*'s acknowledgement that Second Amendment rights are subject to restrictions—the same *Heller* dicta that the *Bruen* majority explicitly affirmed. *See id.* ("In short, *Heller* states that the Second Amendment right is not unlimited, and, in fact, it is specifically *limited* in the case of felon

10

prohibitions." (citing *Heller*, 554 U.S. at 626)); *see Bruen*, 142 S. Ct. at 2156.[3] So *Carey* stands apart from other Sixth Circuit cases that relied on the two-step test and are thus on uncertain footing following *Bruen*.

Accordingly, this Court joins other Eastern District of Michigan judges and Sixth Circuit courts in concluding that *Carey* "remains good law after *Bruen*" and that "this Court remains bound by that precedent." *United States v. Mackey*, No. 23-67, 2023 WL 8093071, at *2 (E.D. Mich. Nov. 21, 2023) (citation omitted); *see also Williams*, 2023 WL 8190690, at *3 ("*Carey* retains its controlling weight post-*Bruen* because it did not apply a means-end scrutiny test."); *Nelson*, 2023 WL 4249367, at *5 (rejecting defendant's facial challenge to § 922(g)(1) and denying motion to dismiss because "the Court is bound by the Sixth Circuit's decision in *Carey*"); *United States v. JttonAli One Eye El Bey*, No. 21-110, 2024 WL 22701, at *3 (S.D. Ohio Jan. 2, 2024); *cf. United States v. Staley*, No. 23-228, 2023 WL 8520783, at *2–3 (M.D. Fla. Dec. 8, 2023) (denying motion to dismiss a felon-in-possession indictment and reasoning that *Bruen* did not abrogate an Eleventh Circuit case that, like *Carey*, upheld

---

[3] The *Carey* panel cited an earlier Sixth Circuit case that found § 922(g)(1) constitutional in an unpublished opinion. *Carey*, 602 F.3d at 741 (citing *Frazier*, 314 F. App'x at 807). *Carey* adopted *Frazier*'s holding. *Frazier*, like *Carey*, relied on *Heller*'s "longstanding prohibitions" language and did not apply the two-step test. So *Carey* neither applied means-end scrutiny nor cited Sixth Circuit precedent that applied means-end scrutiny.

11

§ 922(g)(1) based on "the text and history of the Second Amendment and *Heller*" and not based on means-end scrutiny).

### III.

Having concluded that *Bruen* neither overturned *Heller* nor abrogated *Carey*, Freeman's arguments are foreclosed.

Freeman argues that "the people" who have Second Amendment rights include people convicted of felonies, that the Second Amendment's plain text thus presumptively protects his right to possess a firearm, and that the government cannot rebut this presumption because it cannot establish a "relevantly similar" historical regulation on people convicted of felonies. (ECF No. 22, PageID.67–68); *see Bruen*, 142 S. Ct. at 2132. So, says Freeman, his prosecution under the felon-in-possession statute is unconstitutional.

The government responds that *Bruen* neither overruled *Heller*'s assertion that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful" (*see* ECF No. 24, PageID.87 (quoting *Heller*, 554 U.S. at 626 & n.26)) nor abrogated the Sixth Circuit's decision in *Carey* affirming the constitutionality of the felon-in-possession statute (*id.* at PageID.90–92). So, the government contends, § 922(g)(1) remains constitutional post-*Bruen*. (*Id.* at 93–94.)

The Court agrees with the government for the reasons outlined above—and is not an outlier in doing so.

12

Since *Bruen* was decided, the Seventh, Eighth, and Tenth Circuits have upheld § 922(g)(1) as consistent with historical firearm regulations and have concluded that *Bruen* did not upset their post-*Heller* precedent affirming § 922(g)(1). *See, e.g.*, *United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074, at *2 (7th Cir. Sept. 22, 2022); *United States v. Jackson*, 69 F.4th 495, 501–02 (8th Cir. 2023); *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023); *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023); *see also United States v. Garza*, No. 22-51021, 2023 WL 4044442, at *1 (5th Cir. June 15, 2023) (rejecting defendant's Second Amendment challenge to § 922(g)(1) conviction on plain error review); *United States v. Riley*, 635 F. Supp. 3d 411, 423 (E.D. Va. 2022) ("No court confronted with the same or similar facial challenge to the felon-in-possession statute . . . has found § 922(g)(1) unconstitutional and each has roundly rejected reading *Bruen* to obliterate—let alone obfuscate—the 'longstanding prohibitions on the possession of firearms by felons.'" (quoting *Heller*, 554 U.S. at 626) (collecting cases)).

True, the Third Circuit recently held that the felon-in-possession statute was unconstitutional as applied to a "nonviolent" felony offender who had been convicted of making a false statement to obtain food stamps. *See Range v. Att'y Gen.*, 69 F.4th 96, 98–99, 106 (3d Cir. 2023) (en banc). But *Range* does not alter the result here for several reasons.

13

First, the Third Circuit's holding in *Range* is not binding on this Court. It also represents an "outlier[]" viewpoint—and one that this Court does not find persuasive in light of the weight of authority. *See Keels*, 2023 WL 4303567, at *6 ("Every other appellate court to consider section 922 since *Bruen* has upheld the statute's constitutionality. So, too, has this Court, and every federal district court in this circuit." (citations omitted)). The Third Circuit found § 922(g)(1) inconsistent with historical firearm regulations, *Range*, 69 F.4th at 103–05, but, "§ 922(g)'s restriction on possession of firearms by felons . . . has a long and established history in English and American common law," *United States v. Smith*, 2023 WL 2215779, at *3 (omission in original) (citations omitted); *see Jackson*, 69 F.4th at 502 ("History shows that the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people."). And as already shown, *Carey* and *Bruen* both recognize that Second Amendment rights are not unlimited and that certain restrictions would be constitutional. So *Range* is neither binding nor persuasive.

Further, the decision in *Range* was "a narrow one." *Range*, 69 F.4th at 106; *see id.* at 109 (Ambro, J., concurring) ("I write separately . . . to explain why the Government's failure to carry its burden in this case does not spell doom for § 922(g)(1). It remains 'presumptively lawful.'"). The Third Circuit held that § 922(g)(1) was unconstitutional "only as applied to" Bryan Range.

14

*Id.* at 106 (majority opinion); *see also United States v. Adams*, No. 23-122, 2024 WL 54112, \*5 (M.D. Pa. Jan. 4, 2024) ("Applying the test set forth in *Bruen*, the Third Circuit Court of Appeals determined that § 922(g)(1) was unconstitutional as applied to exactly one individual, Bryan David Range."). That holding turned on the fact that Range's underlying conviction was for a "nonviolent, non-dangerous" offense. *Range*, 69 F.4th at 99; *see id.* at 104–05. Indeed, the Third Circuit emphasized Range's unique circumstances: he was convicted of food stamp fraud almost 30 years prior, his criminal history since his 1995 conviction was "limited to minor traffic and parking infractions and a summary offense for fishing without a license," *id.* at 98, and he challenged the felon-in-possession statute as applied to him because he wanted to "possess a rifle to hunt and a shotgun to defend himself at home," not because he faced a criminal charge for violating the statute, *id.* at 103. So the Third Circuit found in Range's favor because the government had not met its burden of showing "that our Republic has a longstanding history and tradition of depriving people *like Range* of their firearms." *Id.* at 106 (emphasis added); *see, e.g., id.* at 104 (concluding that "the earliest version of" the felon-in-possession statute "applied only to *violent* criminals" and thus was not a sufficient historical analogue). But *Range* explicitly agreed that "the legislature may constitutionally strip certain groups of that right [to keep and bear arms]." *Id.* at 102 (internal quotation marks omitted).

15

Freeman likewise presents an as-applied challenge to the felon-in-possession statute, but he makes no argument about the statute's unconstitutionality as applied to his specific criminal history. (*See generally* ECF Nos. 22, 25.) Even if he had, Freeman is not "like Range," *Range*, 69 F.4th at 106, so the Third Circuit's reasoning is inapplicable. Freeman has been convicted of a relatively recent violent felony—assault with intent to do great bodily harm less than murder in 2017. (*See* ECF No. 1, PageID.5–6); *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017) (explaining that assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84(1)(a), "qualifies as a crime of violence" under both federal sentencing guidelines and Armed Career Criminal Act because use or threatened use of violent force is an element of the offense). And Range challenged the felon-in-possession statute before he was in possession of a gun, after his applications for a firearm were rejected, *Range*, 69 F.4th at 98–99, while Freeman "violated a law that he knew applied to him for a second time; he had already been convicted in 2017 of being a felon in possession" and has had several convictions for unlawful possession of a firearm (ECF No. 24, PageID.105 & n.2). So even if this Court found its holding persuasive, *Range* is inapplicable here.

Finally, and "[m]ore importantly, *Bruen* does not suggest that a court must analyze the criminal history of each charged felon to determine if his or her predicate crime fits within a constitutional firearm possession bar." *Keels*,

16

2023 WL 4303567, at *6; (*see also* ECF No. 24, PageID.106.) This Court agrees with the Eighth Circuit that "history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." *Jackson*, 69 F.4th at 504. Still, even under a felony-by-felony analysis, Freeman's as-applied challenge fails.

## IV.

In sum, the Court has thoroughly reviewed both the parties' arguments in this case and a great number of opinions on this question. (ECF Nos. 22, 24, 25.) The Court agrees with the overwhelming consensus that *Bruen* is no barrier to a § 922(g)(1) prosecution. And in light of the overwhelming weight of binding and persuasive authority, the Court sees no reason to conduct any deeper analysis of the issue. *See, e.g.*, *United States v. Smith*, 2023 WL 2215779, at *3 ("Given the Supreme Court's direction on the constitutionality of felon-in-possession statutes discussed above, this Court does not consider extensive historical discussion essential to resolving [defendant's] argument [that § 922(g)(1) is unconstitutional under *Bruen*]."); *United States v. Bluer*, No. 22-20557, 2023 WL 3309844, at *6 (E.D. Mich. May 8, 2023); *Williams*, 2023 WL 8190690, at *5.

## V.

For the foregoing reasons, Freeman's motion to dismiss his indictment (ECF No. 22) is DENIED.

SO ORDERED.

Dated: January 30, 2024

                                             s/Laurie J. Michelson
                                             LAURIE J. MICHELSON
                                             UNITED STATES DISTRICT JUDGE